UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____
|
|
UNITED STATES OF AMERICA, | Case No. 1:09-cr-140
|
    Plaintiff, | HONORABLE PAUL L. MALONEY
|
        v. | Magistrate Judge Joseph G. Scoville
|
LARRY WILCOX, |
|
    Defendant. |
|
_____|

## Opinion and Order

**Granting the Defendant's Motion to Dismiss Count One of the Indictment**

    In May 2009, a federal grand jury issued an indictment charging Larry William Wilcox, Senior ("Wilcox") with three crimes: aggravated identity theft in violation of 18 U.S.C. §§ 1028A(a)(1) and (c)(5); retaliating against a federal judge by filing a false claim in violation of 18 U.S.C. § 1521; and mail fraud in violation of 18 U.S.C. § 1341. *See* Doc. No. 1. These charges arise out of Wilcox allegedly preparing, signing, and filing Uniform Commercial Code ("UCC") Financing Statements with the State of Michigan in order to encumber the real and personal property of government officials.

    Also in May 2009, Wilcox was arrested, arraigned, pled not guilty, and retained private counsel. The United States Magistrate Judge denied the prosecution's request for detention pending trial, releasing Wilcox on a $100,000 bond secured by $10,000 cash deposited with the Clerk of Court and by his and his wife's agreement to forfeit property if he failed to appear. *See* Doc. Nos.

3-17. In July 2009, Wilcox waived his speed trial rights, *see* Doc. No. 21, and the court held a status conference. *See* Doc. Nos. 21-23. In September 2009, the court granted the parties' joint stipulation to modify Wilcox's conditions of release to permit limited travel. *See* Doc. No. 27.

With an extension, Wilcox filed a FED. R. CRIM. P. 12(b)(3)(A) motion to dismiss count one of the indictment on October 27, 2009, and the prosecution filed an opposition brief on November 30, 2009, s*ee* Doc. Nos. 29-34; Wilcox did not file a reply brief. The court heard oral argument on Monday, December 7, 2009. For the reasons that follow, the court will grant Wilcox's motion and dismiss count one of the indictment.

> Count One charges Wilcox with Aggravated Identity Theft as follows:
>
> During in or about July 2008, in Lansing, Eaton County, in the Southern Division of the Western District of Michigan, the defendant, LARRY WILLIAM WILCOX, Sr., did knowingly use, without lawful authority, means of identification of approximately 57 other persons, such means of identification consisting of their names and addresses, during and in relation to a felony violation of 18 U.S.C. § 1341, to wit, mail fraud.
>
> Specifically, Defendant used the noted means of identification to complete approximately 57 fraudulent Uniform Commercial Code (UCC) Financing Statements, which applications he then sent, or caused to be sent, by mail to the Michigan Department of State UCC filing office, for the purpose of encumbering the real and personal property of those persons with false liens.

Indictment (Doc. No. 1) at 1 (citing 18 U.S.C. § 1028A(a)(1) and § 1028A(c)(5)). The Aggravated Identity Theft statute in count one provides, in pertinent part:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1). According to 18 U.S.C. § 1028A(c)(5), the predicate felonies which trigger the aggravated identity theft prohibition include mail fraud in violation of title 18, chapter

63, and count three charges Wilcox with such an offense.

Wilcox persuasively contends that the aggravated identity-theft charge is inappropriate for several reasons. Primarily, he argues that

> [t]hose [UCC] forms are apparently signed by the Defendant Wilcox and in no way attempts to transfer, possess or use any other person's means of identification to perfect the filing of that form. That form is filed by the person who believes himself to be the creditor and provides notice of the claim.
>
> * * *
>
> Upon a close reading of the Indictment, the government alleges that Mr. Wilcox completed and mailed 57 fraudulent Uniform Commercial code (UCC) Financing Statements against third parties *under his own name. Mr. Wilcox is alleged to have used his real name, his real address and in no way attempted to hide the fact that he had a claim for which he was requesting relief. There was no subversion of the identity of the person who was being claimed against* [sic]. Each of them was clearly identified and placed on notice.

Defendant's Amended Motion to Dismiss Count One of the Indictment ("MTD") at 2 ¶ 5 and 3 ¶ 7 (emphasis added).[1] In short, Wilcox reasons that even

> [a]ssuming the allegations made by the Government against Mr. Wilcox are correct, Count I must fail because Mr. Wilcox did not engage in "fraud or deception" as the Government [charges] since Mr. Wilcox did not disguise his identity in any meaningful way [with respect to] the alleged submission of the UCC Financing Statements.

MTD at 4 ¶ 10.

As an example of conduct which 18 U.S.C. § 1028A is intended and used to punish, Wilcox proffers *Flores-Figueroa v. US*, – U.S. –, 129 S.Ct. 1886 (2009), where a Mexican citizen submitted

---

[1] Wilcox adds that "[t]o further complicate the government's assertion of criminality there is no evidence that the UCC statements were filed by use of the United States mails." MTD at 2-3 ¶ 5. The court intimates no opinion as to whether the government has evidence sufficient to support a finding beyond a reasonable doubt that Wilcox used the United States mail to file the allegedly fraudulent statements. Count one fails even if Wilcox did use the United States mail to file those statements. If the parties do not reach a plea agreement on the remaining counts, a jury will decide whether Wilcox used the mail in the illegal manner described in count three, mail fraud.

a false name, false birthdate, false Social Security, and counterfeit alien-registration card to an employer in the year 2000. In 2006, the illegal alien presented the employer with a new Social Security card and alien-registration card; unlike the previous cards, these bore his real name but numbers that had been assigned to other people. When the employer reported the illegal alien, the federal government prosecuted him for aggravated identity theft under 18 U.S.C. § 1028A(a)(1). Wilcox also relies on a U.S. House of Representatives Judiciary Committee Report stating that "identity theft" and "identity fraud", as used in this statutory provision, refer to "all types of crimes in which someone wrongfully obtains and uses another person's personal data in some way that involves fraud or deception." MTD Br. at 7 (quoting H.R. Rpt. 108-528 (June 8, 2004) at 780).

Finally, by way of contrast to his charged conduct in the instant case, Wilcox points to three lower-court examples of the conduct which 18 U.S.C. § 1028A has been used to punish: *US v. Amry*, 2003 WL 124678 (S.D.N.Y. Jan. 16, 2003) (Cote, J.), where, Wilcox alleges,[2] a health-club employee used a machine to steal members' names, social security numbers, and credit-card data, which were then used to create false "green cards" and Social Security cards, *see* MTD Br. at 7, and *US v. Scheller*, No. 2001-crim-318 (E.D. Cal.), where, Wilcox alleges,[3] a bank employee used her employer's computer system to gather potential customers for a friend who was starting a real-estate business and ultimately someone else used those customers' information for some unspecified

---

[2] The decision cited by Wilcox contains no description of the allegedly unlawful conduct committed by the defendant in the *Amry* case. Nor does WestLaw offer any other decision issued in that case.

[3] Oddly, Wilcox fails to supply a WestLaw or Lexis citation for the *Scheller* case. WestLaw does not display a decision in any California federal district court, in any year, where the United States and anyone named "Scheller" or "Sheller" were both parties.

identity-theft scheme, *see* MTD Br. at 7.

Wilcox also cites *US v. Opara*, No. 2000-crim-1693, which he identifies as a "Western Division of California" decision. Wilcox alleges that in that case, the defendant stole the identities of 24 people and used them to submit false federal income-tax returns for them. Wilcox presumably meant "district", not "division." Unfortunately for Wilcox, there is no federal district known as the Western Division of California. Moreover, WestLaw contains no decision from any federal district court in California, in any year, where the United States and anyone named "Opara" or "Oppara" or "Oparra" or "Opparra" were parties.

**Nonetheless, Wilcox's argument has merit. The government's opposition brief fails to explain how Wilcox's alleged filing of UCC Statements using his own true name and address as the purported creditor and the true names of purported debtors could possibly constitute the** knowing transfer, possession, or use, "without lawful authority, [of] a means of identification of another person", as required for a conviction under 18 U.S.C. § 1028A(a)(1).

The only portion of the government's brief which even purports to address this issue reads as follows, in its entirety:

> Count 1 of the Indictment alleges the Defendant unlawfully used the names and addresses of other persons during and in relation to the fraudulent filing, through the mail, of specious UCC statements in order to encumber the property of other persons, which was itself a violation of the Mail Fraud statute, 18 U.S.C. § 1341. *See United States v. Speight*, 75 Fed. App'x 802, 803-05 (2d Cir. 2003) (affirming mail fraud conviction for conduct identical to Defendant's); *see also Monroe v. Beard*, 536 F.3d 198, 202 n.2 (3d Cir. 2008) (discussing growing trend of retaliatory false-lien filing against government officers).
>
> Mail Fraud is a predicate felony for aggravated identity theft. 18 U.S.C. § 1028A(c)(5). In turn, Count 3 of the Indictment charges Defendant with committing that Mail Fraud, incorporates Count 1 by reference, and in so doing explains that the overarching fraud scheme at issue involves Defendant's mailing demands for payment to victims, demands [which] he backed up with threats to file the UCC

statements in order to encumber their property if they did not comply with his demands.

The Government's proofs will establish that the demands were fraudulent and completely baseless, and that they were submitted as part of the Mail Fraud alleged in Count 3. The term "means of identification" is defined as including "any name . . . that may be used, alone or in conjunction with any other information, to identify a specific individual . . . ." 18 U.S.C. § 1028(d)(7).

*Count 1 alleges that Defendant used the names and addresses of the victims to complete the UCC forms, which he then mailed to the Michigan Department of State. If the jury concludes that he acted with fraudulent intent, it may also conclude that his use of those means of identification was unlawful, and each element of 18 U.S.C. § 1028A(a)(1) will have been made out.*

Gov Opp at 4-5 (second paragraph break added, emphasis added). This is merely a conclusory assertion. The reasoning is unpersuasive. The connection of Wilcox's fraudulent intent in filing the UCC statements with the disputed "use of the means of identification of another person" element of the identity-theft count is not merely debateable or attenuated, it is non-existent. Not surprisingly, the government cites not one case wherein 18 U.S.C. § 1028A(a)(1) was used to prosecute conduct like that alleged here, and the court finds no such cases.

The remainder of the government's arguments, while they may be accurate or logical regarding the interpretation of the statute, do nothing to explain how filing a statement openly in one's own name and only in one's own name – never claiming or implying that he was someone else or was filing on behalf of someone else – can constitute the knowing transfer, possession, or use, "without lawful authority, [of] a means of identification of another person." The government's other arguments may be summarized as follows:

– although Wilcox identifies three decisions where the statute was apparently used to punish the use of another person's means of identification "as a disguise to commit fraud",

the statute does not contain such an element, and it may be used to punish conduct that is not surreptitious, so long as the transfer, use or possession of the other person's means of identification was "without lawful authority", Gov Opp at 2-3;

– the statute does not require proof that the person whose identification was misused was alive at the time of the misuse, *see* Gov Opp at 3, an issue which Wilcox did not raise;

– Wilcox is effectively invoking the rule of lenity, which applies only where a criminal statute is ambiguous, and this statute is not ambiguous, and Wilcox's reference to the legislative history is inappropriate given the lack of ambiguity, *see* Gov's Opp at 5-6 (citing, *inter alia*, *US v. Johnson*, 529 U.S. 53, 59 (2000) (quoting *Staples v. US*, 511 U.S. 600, 619 n.17 (1994)).

But Wilcox does not need to resort to legislative history to win this argument. Specifically, the court need not consult and adopt the House Report statement that "identity theft" and "identity fraud", as used in this statute, refer to "all types of crimes in which someone wrongfully obtains and uses another person's personal data *in some way that involves fraud or deception*." H.R. Rpt. 108-528 (June 8, 2004) at 780 (emphasis added). The plain text of 18 U.S.C. § 1028A(a)(1) simply makes no reference to fraud or deception, and the text is not ambiguous as to what the statute *does* require. As the Sixth Circuit recently declared,

> Regarding statutory construction, we are guided by the following well-established principles:
>
> "[i]t is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function

> of the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485 (1917). "If the words are plain, they give meaning to the act, and it is neither the duty nor the privilege of the courts to enter speculative fields in search of a different meaning." *Id.* at 490.
>
> Recognizing the consequences of unbridled judicial forays into the legislative sphere, the Supreme Court has admonished "'time and again that a legislature says in a statute what it means and means in a statute what it says there.'" *Arlington Cent. Sch. Dist. Bd. of Ed. v. Murphy*, 548 U.S. 291, 296 (2006) (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992)). Accordingly, "[w]hen the statutory language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Id.* (internal citations and quotation marks omitted). *See also Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ("[The courts'] inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent.") (internal citations and quotation marks omitted); *Rubin v. United States*, 449 U.S. 424, 430 (1981) ("When we find the terms of a statute unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances.").

*US v. Washington*, 584 F.3d 693, 695 (6th Cir. 2009) (Richard Allen Griffin, J., joined by Siler, J.) (quoting *Thompson v. North Am. Stainless, LP*, 567 F.3d 804, 807 (6th Cir. 2009) (*en banc*) (Griffin, J.), *pet. cert. filed o.g.*, 78 U.S.L.W. 3113 (U.S. Sept. 3, 2009) (No. 09-291)).

Thus, this court lacks the authority to read a fraud or deception element into 18 U.S.C. § 1028A(a)(1) when Congress chose not to explicitly require such an element. If Congress wished to require proof of fraud or proof of deception different from or beyond that which inheres in the words they chose, they knew how to do so and could have done so expressly. *See First American Title Co. v. Devaugh*, 478 F.3d 438, 445 (6th Cir. 2007) (Griffin, J.) (after noting that Mich. Comp. Laws § 15.443(d) prohibited public bodies from re-selling information which they obtained for free from county register of deeds, Circuit concluded that absence of no-resale provision in subsection governing information sold to private parties meant that Michigan Legislature did not intend to impose no-resale provision in the latter context), *reh'g & reh'g en banc denied* (6th Cir. July 12, 2007) (citing *Marx v. Centran Corp.*, 747 F.2d 1536, 1545 (6th Cir. 1984) (after noting that 12

U.S.C. § 93(a) contained an express cause of action and § 93(b) did not, Circuit remarked, "this difference between the two subsections leads to the conclusion that 'when Congress wishes to provide a private damages remedy, it knew how to do so and did so expressly.'") (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979))).

**Nonetheless, as explained above, the plain text of the statute in count one cannot be stretched to cover Wilcox's alleged conduct.** *Cf. Us v. Recticel Foam Corp.*, 858 F. Supp. 726, 736 (E.D. Tenn. 1993) (Murrian, M.J.) (recommending that district judge grant criminal defendant's motion to dismiss 12 charges under environmental statutes, and accept defendant's contention that "the prosecution cannot stretch the 'contained in' interpretation . . . to cover the waste streams previously covered by the Mixture Rule as it is attempting to do in this case . . . ."). It is simply not alleged that Wilcox (with or without legal authority) used, possessed, or transferred the "means of identification" of any of the persons named as debtors in the UCC financing statements which he allegedly filed.

Under the facts as alleged by the prosecution, Wilcox did absolutely *nothing* with, or with regard to, any person's "means of identification." in any manner criminalized by Section 1028 A(2)(1). To confirm the clear inapplicability of the aggravated identity theft statute to Wilcox's alleged conduct, the court refers first to the statute's definition of "means of identification" as

> any name or number that may be used, alone or in conjunction with other information, to identify any specific individual, including any –
>
> (A) name, social security number, date of birth, official State or government issued driver's license or identification, alien registration number, government passport number, employer or taxpayer identification number;
>
> (B) unique biometric data, such as fingerprint, voiceprint, retina or iris image, or other unique physical representation;

> (C) unique electronic identification number, address, or routing code; or
>
> (D) telecommunication identifying information or access device (as defined in section 1029(e))[.]

18 U.S.C. § 1028(d)(7)(A-D). As noted above, the aggravated identity-theft statute criminalizes the knowing unauthorized "use, transfer or possession" of someone else's means of identification for an unlawful purpose, *see* 18 U.S.C. § 1028A(a)(1). In turn, a closely related statute explains that for purposes of identity theft and section 1028A aggravated identity theft, "transfer"

> includes selecting an identification document, false identification document, or document-making implement and placing or directing the placement of such identification document, false identification document, or document-making implement on an online location where it is available to others[.]

18 U.S.C. § 1028(d)(10).

Again, to secure a conviction on count one, aggravated identity theft, the government would have to show either that Wilcox, without lawful authority, knowingly used, or possessed, or transferred, someone else's "means of identification", *see* 18 U.S.C. § 1028A(a)(1). The facts alleged in count one simply cannot establish the use or possession versions of the offense. There is no allegation, for example, that Wilcox possessed or used another person's *physical* identification marker, i.e., some actual object bearing that person's name or identifying information – such as a social security card, driver's license, passport, "green card" (legal permanent resident card), State I.D. card, credit card, or even a piece of mail addressed to that person – to portray himself as that other person, or to imply that he was authorized to act on behalf of that person. *Contrast US v. Jenkins-Watts*, 574 F.3d 950, 960-62 (8th Cir. 2009) (Wollman, John Gibson, Murphy) (affirming convictions and sentence for aggravated identity theft and other offenses for scheme where defendant "Strother created two counterfeit [Kansas driver's] licenses for women to pose as Jane

Doe"), *reh'g denied* (8th Cir. Oct. 14, 2009); *US v. Cekosky*, 171 F. App'x 785 (11th Cir. 2006) (p.c.) (Anderson, Black, Barkett) (affirming identity-theft conviction where defendant used other people's names and social security numbers to set up bank accounts purportedly in their names, then deposited his own income in those accounts in an attempt to evade federal taxes due on that income).

Nor is there any allegation that Wilcox possessed or used another person's identifying information in *non-physical* form – such as a social security number, driver's license number, passport number, alien registration number, birthdate, or bank account number – to portray himself as that other person, or as authorized to act on behalf of that person. Whether in tangible or intangible form, then, there is no suggestion that Wilcox "used, possessed, or transferred" any means of identifying another person in order to arrogate their identity to himself and induce someone to believe that he was that person.

Finally, the facts as alleged in count one cannot establish that Wilcox "transferred" anyone else's "means of identification" – as defined by 18 U.S.C. § 1028(d)(10) and 18 U.S.C. § 1028(d)(7), respectively – as required for the third of the three alternative ways to convict for aggravated identity theft under 18 U.S.C. § 1028(a)(1).

In short, the very title of section 1028A(a)(1) is Aggravated *Identity Theft*, and the allegations of count one cannot be contorted to constitute Wilcox's theft of the identity of any of the putative UCC debtors. One *can* commit identity theft by using another person's mere name, but one must still pass oneself off as that person or acting on behalf of that person. *See, e.g., US v. Norwood*, 2006 WL 952330, *1 (11th Cir. 2006) (in prosecution for conspiracy to defraud the Social Security Administration, mail fraud, wire fraud, and making false statements, defendant admitted that he used the names of his deceased mother and uncle to open bank accounts supposedly on their behalf and

then received their Social Security disability benefits; Circuit affirmed identity-theft enhancement under U.S.S.G. § 2F1.1(b)(5)(C)(I), reasoning, "The names of his mother and uncle were the means of identification. Norwood used those means to produce another means of identification : the bank account numbers. Accordingly, the identity theft enhancement applies."). **According to the facts charged by the prosecution, nothing Wilcox did or attempted to do had any potential for him to steal or assume the identity of another person, i.e., to "pass himself off" as another person, by whatever means.** Wilcox's actions could not possibly have led anyone to believe that he was someone other than himself, and it is not alleged that he tried to induce such a belief or that his actions did induce such a belief. *Contrast US v. Vidal-Reyes*, 562 F.3d 43, 45 (1st Cir. 2009) (appeal of sentence for aggravated identity theft and other offenses arising out of defendant's attempt to pass himself off as a particular named United States citizen, listing that citizen's name, social security number, and other identifiers as his own on his application for a U.S. passport); *US v. Sedore*, 512 F.3d 819, 821 (6th Cir. 2008) (D.J. Sean Cox by designation, with J. Clay concurring) (affirming sentence for identity theft in violation of 18 U.S.C. § 1028(a)(7) where defendant filed fraudulent income-tax returns using the names and social security numbers of other people, effectively representing that he was those people and was therefore entitled to the refunds claimed).

  If Congress had intended to include conduct like Wilcox's within the scope of "aggravated identity theft", it easily could have written 18 U.S.C. § 1028A(a)(1) to accomplish that end. Congress either failed to do so, or chose not to do so. *See US v. Minarik*, 875 F.2d 1186, 1194 (6th Cir. 1989) ("Section 7206(4), as amended, therefore reflects a deliberate choice of Congress to criminalize concealment only of the sort and only under the circumstances defined in the language of the statute. [T]he language of the statute clearly indicates that Congress determined . . . not to

criminalize concealment before levy is authorized.") (citing *US v. Swarthout*, 420 F.2d 831, 835 (6th Cir. 1970) ("If in amending this sentence Congress had intended to make it an offense to conceal property before levy was authorized . . . , it knew how to do so.")).

## ORDER

Defendant's motion to dismiss count one of the indictment [doc. # 29] is **GRANTED**. Count one of the indictment is **DISMISSED**.[4]

This is <u>not</u> a final order, nor is it otherwise immediately appealable. *See US v. Bratcher*, 833 F.2d 69, 72 (6th Cir. 1987) ("The *Cohen* exception permits interlocutory appeals only in two situations in criminal prosecutions: (1) . . . orders denying motions to dismiss on double jeopardy grounds; and (2) . . . orders denying motions to reduce bail before trial.") (citations omitted).

IT IS SO ORDERED ON THIS <u> 4th </u> day of January, 2010.

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge

---

[4] Due to an ends-of-justice continuance, the final pretrial conference is now scheduled for Monday, February 22, 2010 in Kalamazoo, and jury trial is scheduled to commence on Tuesday, March 2, 2010 in Lansing. *See* Doc. No. 36 (Order filed Dec. 9, 2009). The trial will involve only counts two and three.